**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COREY BEITLER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-104** |
| | : | |
| **CITY OF ALLENTOWN,** *et al* | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                          March 14, 2022

Corey Beitler pro se claims the Commonwealth has held him in the Lehigh County Prison waiting for the start of his criminal trial on state court charges since December 2020. He alleges he contracted COVID and Methicillin-resistant Staphylococcus aureus while in custody because Prison officials did not follow mandated quarantine procedures. He alleges Prison officials retaliated against him when he refused to enter a cell with a COVID positive person and interfered with his ability to meaningfully meet with his counsel. He claims medical professionals gave him the wrong medicine and failed to perform proper medical tests. He also sues the local newspaper for its inaccurate coverage of the Prison's actions.

We granted Mr. Beitler leave to proceed without paying the filing fees. Congress requires we screen his Complaint for merit before issuing summons. He pro se sues parties not responsible for Prison conduct including his criticism of the local press. He also sues Prison officials who could possibly be responsible for harm, but he does not plead how or why. He fails to state a claim. We dismiss his pro se Complaint in part with prejudice as to those with no role in the Prison or who are not state actors. We dismiss the remaining claims against Prison officials and medical professionals causing his claimed harm without prejudice to timely filing an amended complaint supported by facts giving rise to claims under federal law.

## I.     Pro se allegations

The Commonwealth is holding Corey Beitler in custody as a pretrial detainee at Lehigh County Prison since December 2020.[1] Lehigh County Prison and its staff failed to follow state-mandated quarantine procedures causing him to contract COVID and Methicillin-resistant Staphylococcus aureus (MRSA) at some unplead time.[2] Unidentified Prison staff forced Mr. Beitler to "go into a cell with someone who had tested positive with COVID" and then imposed retaliatory discipline by "put[ting] [him] in the hole" when he refused to do so.[3] The Prison "guards don't get tested or wear masks."[4] The staff "violate[] their own policies and the Supervisors are aware and disregard them."[5]

Mr. Beitler filed grievances, but Prison officials threw them out and kept him from meaningfully meeting with his attorney.[6] Prison officials "hinder[ed] [his] ability to defend [himself]" and caused his trial to be "continued [six] times [with] still no discovery."[7] PrimeCare Medical gave him the wrong medications to treat his MRSA and failed to take proper blood and urine tests.[8] Mr. Beitler also criticizes the newspaper *The Morning Call's* coverage of the Prison's COVID response.

Mr. Beitler alleges this experience "completely altered [his life] in a negative way."[9] It caused him to "[lose] [his] sense of taste [and] smell," and develop "PTSD psychological damage, hypertension, asthma, severe depression and anxiety, along with other ailments."[10] Because PrimeCare Medical gave him the wrong medications to treat his MRSA, he now has "internal problems with pain going to the bathroom every day."[11] His age and pre-existing conditions of high blood pressure and diabetes compounded these physical and psychological effects.[12] He "worr[ies] every night [he'll] never see [his] daughter again because [he] might die in [the Prison]."[13]

Mr. Beitler requests "summary judgment on all claims and [for us] to assign counsel to make the claim proceed accordingly."[14] We preliminarily declined to appoint counsel at this early stage as Mr. Beitler does not raise a claim with "arguable merit."[15]

## II.    Analysis

Mr. Beitler pro se sues the City of Allentown, Lehigh County, the Prison, Prison officials, PrimeCare Medical, *The Morning Call* and its Editor for violating his First, Sixth, and Fourteenth Amendment rights.[16] He seeks judgment on all claims. But he cannot proceed against the City and the Prison as they are not persons under the civil rights laws when Lehigh County owns and manages the Prison. Mr. Beitler does not allege Lehigh County policies or customs giving rise to a municipal liability claim. Mr. Beitler also does not allege the facts necessary to proceed on his claims against the Prison officials and staff or the PrimeCare medical professionals. He also fails to state a claim against the media.

We granted Mr. Beitler's application to proceed without paying the filing fees.[17] Congress directs we dismiss a claim filed without paying filing fees which we find frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[18] We evaluate the merits of his pleading by determining whether he pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] We accept all fact allegations as true and construe those facts in the light most favorable to the plaintiff to determine whether he states a claim for relief plausible on its face.[20] We must be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings …'"[21] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[22] But "pro se litigants still must allege sufficient facts in their complaints to support a

claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[23]

Mr. Beitler claims the Prison and its medical staff harmed him while incarcerated awaiting his criminal trial in state court. Mr. Beitler is suing to enforce constitutional rights. Congress created the civil rights law to bring federal constitutional claims in federal court. To proceed, Mr. Beitler "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."[24]

Before Mr. Beitler can pursue his civil rights "claims in federal court, [he] must comply with the exhaustion requirements specified in the [Prison Litigation Reform Act.]"[25] "Plaintiffs must first avail themselves of the administrative grievance procedures extant within the correctional system they find themselves placed."[26] Because the delay in resolving grievances can unfairly obstruct access to the courts, "the [Act's] exhaustion requirement is met at the moment corrections officials fail to respond to grievances . . ."[27] A prison grievance policy is not an "available remedy" when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[28] "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the [Act's] exhaustion requirement."[29]

Mr. Beitler claims he tried to file multiple grievances which Prison officials "thr[ew] out."[30] Accepting this allegation as true, Mr. Beitler alleges the Prison's grievance process is not an available remedy. We find Mr. Beitler satisfies the Prison Litigation Reform Act's exhaustion

requirement on this preliminary record subject to further defenses should the case proceed beyond screening.

**A.   We dismiss Mr. Beitler's claims against the City of Allentown with prejudice.**

Mr. Beitler sues the City of Allentown. But the Prison is operated by Lehigh County, not by the City of Allentown.[31] He alleges no other facts against the City of Allentown. We dismiss this claim with prejudice.

**B.   We dismiss Mr. Beitler's claims against Lehigh County Prison with prejudice.**

Mr. Beitler sues the Lehigh County Prison. A prison is not a "person" under section 1983.[32] As section 1983 claims may only be brought against *persons* acting under the color of state law, we must dismiss this claim with prejudice.

**C.   We dismiss Mr. Beitler's claims against *The Morning Call* and its editor with prejudice.**

Mr. Beitler claims a local newspaper *The Morning Call* and its "Editor (2020-2021)" "continue[] to write about how great [Lehigh County Prison] handled the pandemic" yet refused to "write about [allegations of] sexual harassment."[33] He offers no insight on how alleged sexual harassment relates to him. He does not allege how the press is a state actor liable for violating his civil rights.

Mr. Beitler must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[34] Whether a private entity or individual is acting under color of state law depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."[35]

Our Court of Appeals has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised

powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."[36] "Action taken by private entities with the mere approval or acquiescence of the State is not state action."[37] To support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'"[38]

Judge Quinones found nearly a decade ago *The Morning Call* "[does] not appear to be [a] state actor."[39] Mr. Beitler's sole allegations against the newspaper is its purportedly overly positive coverage of the Prison's handling of COVID and its failure to report alleged sexual misconduct by an unnamed Prison staff member. He does not allege action by *The Morning Call* or its editor constituting state action under the tests outlined by our Court of Appeals. The existence of such conduct is unlikely as "the activities of news organizations and reporters have consistently failed to satisfy the tests concerning state actors."[40]

Mr. Beitler fails to state a constitutional claim against the press. We dismiss his claims against *The Morning Call* and its editor with prejudice.

### D. We dismiss Mr. Beitler's remaining individual claims against Lehigh County, Prison officials, and medical professionals without prejudice.

Mr. Beitler alleges Prison staff mishandled its COVID response. He claims Prison staff: "put [him] in the hole" when he complained about housing with a COVID positive inmate; denied him access to his attorney; and threw out grievances related to his complaints.[41] Mr. Beitler sues Director Donate, Warden Russell, Sgt. Sheaffer, and C.O. Nattress without specifying what they did wrong. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[42] "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions,

has violated the Constitution."[43] Other than naming these individuals in his caption, Mr. Beitler never mentions them again or alleges how these individuals personally acted to violate his constitutional rights. We must dismiss the claims against them. Mr. Beitler failed to allege a fact from which we could conclude states a claim plausible on its face.[44] We nonetheless analyze each claim individually.

### 1. Mr. Beitler does not adequately plead claims against Lehigh County.

To plead a basis for civil rights municipal liability, Mr. Beitler must allege the municipality's policy or custom violated his constitutional rights.[45] "To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."[46] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."[47] "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[48] For a custom to be the proximate cause of an injury, the person must have "had knowledge of 'similar unlawful conduct in the past, [] failed to take precautions against future violations, and [this] failure, at least in part, led to [the plaintiff's] injury.'"[49]

Mr. Beitler does not plead a specific policy or custom of Lehigh County which violated his constitutional rights. Mr. Beitler complains generally the "[Prison] violates their own [grievance, inmate, and medical procedure] policies and the supervisors are aware and disregard them."[50] Mr. Beitler's generalized policy allegations, without more, do not allege a plausible municipal liability claim against Lehigh County. He also does not allege a Prison official knew of earlier similar conduct, failed to prevent a repeat of such conduct, and this failure led to his injury. We must

dismiss Mr. Beitler's claims against Lehigh County without prejudice. Mr. Beitler may timely file an amended complaint if he can cure these defects.

### 2. Mr. Beitler does not adequately plead claims against the Prison staff acting in their official capacity.

Mr. Beitler sues Director Donate, Warden Russell, Sgt. Sheaffer, and C.O. Nattress in their individual and official capacities. Official capacity claims are indistinguishable from claims against the entity who employs them.[51] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[52] Mr. Beitler's official capacity claims against the individual Prison officials are essentially the same as his claims against Lehigh County. Because Mr. Beitler does not allege a Prison official knew of earlier similar conduct, failed to prevent a repeat of such conduct, and this failure led to his injury, we must dismiss his official capacity claims against these officials without prejudice. Mr. Beitler may timely file an amended complaint if he can cure these defects.

### 3. Mr. Beitler does not adequately plead Prison officials failed to provide medical treatment and acted with deliberate indifference to the danger of COVID.

Mr. Beitler alleges Prison officials' "actions caused [him] to contract COVID" by "forc[ing] [him] to go into a cell" with a COVID positive individual.[53] Our Court of Appeals recently instructed in *Hope v. Warden York County Prison*, "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiff] must show the Government knew of *and disregarded* an excessive risk to their health and safety."[54] Our Court of Appeals explained "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference."[55] A reviewing court must defer to the expertise of both medical officials and jail administrators; we cannot assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not . . . subject to

mechanical application in unfamiliar territory."[56] A facility cannot "eliminate all risk" of contracting COVID.[57] A prisoner will fall "well short" of establishing the facility and its staff acted with deliberate indifference toward his medical needs, including his serious preexisting medical conditions, when the facility took concrete steps towards mitigating the medical effects of COVID-19.[58]

Mr. Beitler does not allege specific actions by a Prison official regarding his cell placement. Nor does he point to a specific policy which violated his constitutional rights. His conclusory allegations without more are insufficient to establish a plausible deliberate indifference claim.[59] Mr. Beitler's COVID diagnosis alone is insufficient to establish a constitutional violation.[60] To the extent we can liberally construe Mr. Beitler to be claiming the Prison had inadequate quarantine protocols, his claim speaks, at worst, to negligence. "Deliberate indifference requires significantly more than negligence."[61]

Because we cannot say Mr. Beitler can never assert a plausible claim, we dismiss this claim without prejudice. Mr. Beitler may timely amend his Complaint if he can cure the defects.

### 4. Mr. Beitler does not adequately plead claims against the medical professionals.

Mr. Beitler claims PrimeCare Medical provided him with the wrong medications and failed to conduct certain blood and urine tests.[62] He also alleges unidentified persons "refus[ed] to treat or help [his] medical conditions."[63] His conclusory pro se allegations are insufficient to state a claim.

To state a constitutional claim based on the failure to provide medical treatment, Mr. Beitler must allege facts indicating Prison officials acted with deliberate indifference to his serious medical needs.[64] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[65] Deliberate indifference requires "'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk."[66] Our Court of Appeals has found deliberate indifference when "the prison official (1) knows of [his] need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; [] (3) prevents [him] from receiving needed or recommended medical treatment" or "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[67] Allegations of medical malpractice and mere disagreements regarding proper medical treatment do not establish a constitutional violation.[68]

"A medical need is serious . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[69] A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death."[70]

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[71] "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'"[72] Mr. Beitler alleges unspecified persons provided inadequate medical treatment or refused to provide him medical treatment. These conclusory statements fall short of alleging the requisite deliberate indifference to serious medical needs.

To hold a private healthcare company like PrimeCare Medical liable for a constitutional violation under section 1983, Mr. Beitler must allege it had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."[73] Our Court of Appeals instructs "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"[74] "Because

[PrimeCare Medical] is a private company contracted by a prison to provide health care for inmates . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."[75]

Mr. Beitler does not allege PrimeCare has a policy or custom which violated his constitutional rights. We dismiss this claim without prejudice to amend if he can plead the necessary facts to proceed against the medical professionals.

### 5.   Mr. Beitler does not adequately plead an Equal Protection claim.

Mr. Beitler alleges Prison staff violated his Fourteenth Amendment Equal Protection rights alongside the laundry list of other claims.[76] But he does not plead details about this claim.[77]

We liberally construe Mr. Beitler as alleging arbitrary and intentional discrimination based on the Prison staff's deliberate indifference to his medical needs. To bring such a claim, Mr. Beitler "must state facts showing that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[78] We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently.[79] Because Mr. Beitler does not allege who treated him differently from whom, we must dismiss his Equal Protection Clause claim without prejudice for failing to state a claim.

### 6.   Mr. Beitler does not adequately plead a Due Process claim.

We liberally construe Mr. Beitler as alleging a due process claim based on Prison staff placing him in disciplinary segregation ("the hole").[80]

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"[81] "[T]he imposition of disciplinary segregation [on pretrial detainees] for violation of

prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell.*"[82] Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."[83] "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."[84] "Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."[85]

Mr. Beitler does not allege sufficient facts to infer his placement in segregation amounted to improper punishment or occurred without appropriate attendant notice and process. We dismiss this claim without prejudice.

### 7.   Mr. Beitler does not adequately plead a First Amendment retaliation claim.

Mr. Beitler alleges Prison staff "put [him] in the hole" after refusing to be housed with a COVID positive person.[86] He alleges Prison officials "lied by saying [he] had contraband" as a pretext to place him in solitary confinement.[87]

To state a plausible First Amendment retaliation claim, Mr. Beitler must allege: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct "was a substantial or motivating factor" for the adverse action.[88] Mr. Beitler does not identify the Prison officials who allegedly retaliated against him nor does he specify how long they placed him in segregation. He offers only conclusory allegations. He does not state enough facts to support this claim. We dismiss this retaliation claim without prejudice to be renewed in a timely amended Complaint with facts.

**8. Mr. Beitler does not adequately plead a denial of access to counsel claim.**

Mr. Beitler alleges Prison officials denied him "meaningful contact" with his defense attorney during the COVID pandemic.[89]

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him."[90] "The Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'"[91] Where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."[92] A prison regulation restricting a pretrial detainee's contact with his attorney is unconstitutional where it "unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense."[93]

Mr. Beitler only alleges he had no "meaningful contact" with his attorney. He does not allege specific dates when Prison officials denied him contact, who denied him access, or why he needed to contact counsel. His allegation implies he did in fact have contact with his attorney, but it was not "meaningful." We must dismiss his conclusory allegations for failing to state a claim. But we allow Mr. Beitler to amend his Complaint to add factual allegations supporting this claim.

**9. Mr. Beitler does not adequately plead a Sixth Amendment speedy trial claim.**

Mr. Beitler claims Prison agents violated his Sixth Amendment right to a speedy trial. Mr. Beitler has "been a pretrial detainee almost 2 years."[94] He claims his "speedy trial/Rule 600 rights [were] violated [because] [his] trial has been continued 6 times [and there is] still no discovery."[95]

We consider four factors in evaluating a Sixth Amendment speedy trial right violation: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and

13

(4) the prejudice to the defendant."[96] "That means a plaintiff asserting a speedy trial right violation must plead particular facts about the delay."[97] The "length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."[98]

Mr. Beitler does not plead details about his alleged pretrial detainment, including the charges and the reasons for any delays. Mr. Beitler also does not allege who is responsible for depriving him of his right to a speedy trial. He doesn't plead prejudice. Without these basic facts, he cannot provide fair notice to those allegedly responsible for the delay about the claim against them and the grounds on which it rests. Mr. Beitler fails to state a claim plausible on its face. We dismiss his Sixth Amendment speedy trial claim without prejudice.[99]

## III. Conclusion

We dismiss Mr. Beitler's Complaint for failure to state a claim consistent with our screening obligations set by Congress when reviewing claims filed by pro se prisoners without paying the filing fees. We dismiss his civil rights claims arising from the Prison's conduct towards him against the City of Allentown, Lehigh County Prison, *The Morning Call*, and *The Morning Call* Editor with prejudice as the defects in these claims cannot be cured.

We dismiss Mr. Beitler's remaining claims against Lehigh County, Prison officials, and medical professionals without prejudice to timely amend with sufficient facts to cure the defects. Because of Mr. Beitler's pro se status, we grant him this opportunity to "flesh out [his] allegations by . . . explaining in an amended complaint the 'who, what, where, when and why' of [his] claim."[100] He needs to describe the factual basis for claims including how each named person participated in the alleged denial of his constitutional rights. We may close the case if Mr. Beitler does not timely amend.[101]

---

[1] ECF Doc. No. 2 at 6. The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] ECF Doc. No. 2 at 6.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 6–7.

[6] *Id.* at 6.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.* at 6.

[10] *Id.*

[11] *Id.* at 7.

[12] *Id.* at 6.

[13] *Id.*

[14] *Id.* at 7.

[15] ECF Doc. No. 7 at 1c2.

[16] ECF Doc. No. 2 at 6. Mr. Beitler also claims these persons violated his Eighth Amendment rights. *Id.* at 3-4. We analyze this claim under the Fourteenth Amendment because Mr. Beitler is a pretrial detainee. *Hubbard v. Taylor*, 399 F.3d 150, 166–67, 167 n.23 (3d Cir. 2005) (holding the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

[17] ECF Doc. No. 6.

[18] 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1). We granted Mr. Beitler's Motion to proceed *in forma pauperis*. ECF Doc. Nos. 1, 6. He remains obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

We declined Mr. Beitler's motion to appoint volunteer counsel, finding we first needed to screen his Complaint to better understand the issues, possible discovery, and complexity of the case to determine whether appointment is warranted. ECF Doc. No. 8. Our screening confirms there is no

present basis to appoint counsel, but we may review again if Mr. Beitler's amended Complaint passes our mandatory screening.

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[20] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[21] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[22] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[23] *Id.* (quoting *Mala*, 704 F.3d at 245).

[24] Congress provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted …." 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

[25] *Bailey v. Kirsch*, 438 F. Supp. 3d 399, 401 (E.D. Pa. 2020).

[26] *Id.*

[27] *Id.* at 402.

[28] *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (quoting *Ross v. Blake*, 136 U.S. 1850, 1859–60 (2016)).

[29] *Id.*

[30] ECF Doc. No. 2 at 6, 12–13. Mr. Beitler does not assert this conduct violates a constitutional right. But even if he did this conduct does not rise to a constitutional claim. "[P]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).   "[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

[31] *See Department of Corrections,* https://www.lehighcounty.org/Departments/Corrections (last visited March 10, 2022). We may take judicial notice of the information published on a government website for purposes of statutory screening under section 1915(e)(2)(B). *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) ("To the extent that we rely on information beyond what the government included in its amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

[32] *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010) ("The [Prison] is not a legal entity susceptible to suit."); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (finding prisoner's section 1983 claims against correctional facility must be dismissed because the facility "is not a 'person' under Section 1983") (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)).

[33] ECF Doc. No. 2 at 6.

[34] *West*, 487 U.S. at 48.

[35] *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting *Brentwood Acad. V. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

[36] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations, citations, and alteration omitted).

[37] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

[38] *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

[39] *Hester v. Allentown Police Dep't*, No. 13-4249, 2013 WL 4482453, at *2 (E.D. Pa. Aug. 21, 2013).

[40] *Shareef v. Butler Cty. Pub. Newspaper*, No. 19-320, 2020 WL 3668791, at *4 (W.D. Pa. June 5, 2020), *report and recommendation adopted*, 2020 WL 3642858 (W.D. Pa. July 6, 2020) (collecting cases).

[41] *See generally* ECF Doc. No. 2.

[42] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[44] Liberally construing the Complaint, Mr. Beitler may be alleging Warden Russell and Director Donate are responsible for the claimed constitutional violations because they are generally responsible for managing the Prison. This is insufficient to assert a plausible claim. Generally alleging a supervisory defendant is "in charge of" or "responsible for" an office or facility is

insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("[Plaintiff] asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Mr. Beitler's general reference to the Prison Warden and Director is insufficient to plead their liability for violating his civil rights.

[45] See *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[46] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[47] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[48] *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[49] *Id.* (quoting *Bielevicz*, 915 F.2d at 851).

[50] ECF Doc. No. 2 at 6–7.

[51] *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (citing *Monell*, 436 U.S. at 690 n.55).

[52] *Id.* at 166.

[53] ECF Doc. No. 2 at 6.

[54] 972 F.3d 310, 329 (3d Cir. 2020) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)) (emphasis in original).

[55] *Id.* at 330 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[56] *Id.* (quoting *Lewis*, 523 U.S. at 850) (emphasis omitted).

[57] *Id*.

[58] *See, e.g.*, *id.* at 331.

[59] *Adames v. Pistro*, No. 21-2855, 2021 WL 2903064, at *2 (E.D. Pa. July 9, 2021) (dismissing on screening a *Bivens* claim asserting deliberate indifference based solely on exposure to COVID-19 in prison).

[60] *See Hope*, 972 F.3d at 330 (explaining the Constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue

that the Government must eliminate *entirely* their risk of contracting COVID-19.  That task is not the constitutional standard, however."); *see also Adames*, 2021 WL 2903064, at *2.

[61] *Hope*, 972 F.3d at 329.

[62] ECF Doc. No. 2 at 7.

[63] *Id.* at 12.

[64] *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[65] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[66] *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[67] *Id.* (internal and further citations omitted).

[68] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[69] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)).

[70] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

[71] *See Rode*, 845 F.2d at 1207.

[72] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207)).

[73] *Natale*, 318 F.3d at 583–84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

[74] *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583).

[75] *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) (citations and quotations omitted).

[76] ECF Doc. No. 2 at 3.

[77] *Id.* at 6–7.

[78] *Glenn v. Barua*, 252 F. App'x 493, 500 (3d Cir. 2007) (quoting *Hill v. Borough of Kutztown*, 455 F.2d 225, 239 (3d Cir. 2006)).

[79] *See id.*

[80] ECF Doc. No. 2 at 6.

[81] *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003–06 (7th Cir. 1999)).

[82] *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

[83] *Id.* (citing *Wolff*, 418 U.S. at 563–66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

[84] *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*).

[85] *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

[86] ECF Doc. No. 2 at 6.

[87] *Id.*

[88] *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020).

[89] ECF Doc. No. 2 at 6.

[90] *Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).

[91] *Benjamin*, 264 F.3d at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)).

[92] *Id.* at 187 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

[93] *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

[94] ECF Doc. No. 2 at 6.

[95] *Id.*

[96] *United States v. Briggs*, No. 20-410, 2020 WL 3077171, at *3 (E.D. Pa. June 10, 2020) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

---

[97] *Durham v. City of Philadelphia*, No. 17-5152, 2019 WL 3202506, at *8 (E.D. Pa. July 16, 2019); *See also Rasmussen v. Young*, No. 17-13698, 2018 WL 3763006, at *5 (D.N.J. Aug. 8, 2018) ("Plaintiff has not alleged if or when he asserted his right to a speedy trial on the state charges nor has he described any factors that caused delay in the trial. Therefore, he fails to state a claim.") (internal citation omitted)).

[98] *Barker*, 407 U.S. at 530.

[99] We recognize Rule 600 is not "co-extensive" with the Sixth Amendment regarding the Constitution's guarantee of the right to a speedy and public trial. *Johnston v. Mahally*, 348 F. Supp. 3d 417, 438 (E.D. Pa. 2018) ("While Rule 600 sets a time limit, with various rules for determining how to calculate and assess delays, the Sixth Amendment has no such time limit or rules, and so facially the two are not coextensive."). For the same reasons we found Mr. Beitler failed to state a claim for relief under the Sixth Amendment, we find he also failed to state a claim under Rule 600. We also dismiss his Rule 600 claim.

[100] *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-cv-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).

[101] *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703– 04 (3d Cir. 1996) (holding "the district court did not abuse its discretion when it dismissed with prejudice the otherwise viable claims . . . following plaintiffs' decision not to replead those claims" after the district court "expressly warned plaintiffs … failure to replead the remaining claims . . . would result in the dismissal of those claims.")